Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 9 | **DATE** | 3/13/2001 |
| **CASE TITLE** | Banks vs. Henderson | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** The Court grants defendant's motion (Doc 12-1) for summary judgment in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | Document Number |
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | MAR 14 2001 | |
| | Notified counsel by telephone. | | | date docketed | 27 |
| ✓ | Docketing to mail notices. | | | | |
| ✓ | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| SCT | courtroom deputy's initials | | | date mailed notice | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

DOROTHY L. BANKS, )
)
        Plaintiff, )
)
vs. ) 00 C 0009
)
WILLIAM HENDERSON, Postmaster )
General, United States Postal Service, )
)
        Defendant. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter is before the Court on Defendant's motion for summary judgment. For the reasons set forth below, the Court grants Defendant's motion.

### BACKGROUND

Plaintiff Dorothy Banks ("Banks") has brought this employment discrimination case against her employer, Defendant William Henderson, Postmaster General, United States Postal Service ("Post Office" or "Postal Service"). Banks alleges that the Postal Service discriminated against her because of her race (Black) and her age (68 at the time of the complaint), and further charges that the Postal Service unlawfully retaliated against her because she filed a complaint with the Equal Employment Office.

Banks has worked for the Post Office since 1967. Since 1996, the beginning of the relevant time frame, she has worked as an International Records Clerk at the O'Hare Postal Service facility. In June of 1996, Banks expressed interest in an temporary assignment as the "back-up" General Supervisor in the PSDS (Timekeeper's) Office. Banks learned in July 1996 that she had been selected to train for the position. The PSDS Supervisor Dorothy Thomas informed Banks that she would not be training for the position at that time, and instead Banks' training began on September 30, 1996. See DiMaio Dep. at 8-10. The Post Office asserts that Banks' training was terminated on October 17, 1996 because Thomas felt that Banks did not exhibit a clear understanding of PSDS operations. Def.'s Stmt. of Facts at ¶ 18; Pl.'s Stmt. of Facts at ¶ 18.

On September 9, 1997, Banks filed an EEO Complaint alleging that the Postal Service discriminated against her on the basis of her age and race with respect to this failed training. Banks alleges the Post Office retaliated against her for filing this EEO complaint in two ways.

The first incident of retaliation alleged in Plaintiff's complaint is the Post Office's refusal to allow Banks to serve as supervisor of the International Records Unit (IRU) on a fill-in basis. Banks worked in the IRU from November 1997 to April 1998. During this time, Banks would sometimes serve as the "fill-in" supervisor for Natasha

Washington. Banks was assigned to be the fill-in supervisor from December 8, 1997 to December 12, 1997. See 2/98 Banks Letter (attached as Def.'s Ex. 9). During this time Postal Inspectors conducted an audit of the department and discovered some missing documentation. See Observations of Auditors (attached as Def. Ex. 10). Washington has since refused to choose Plaintiff to serve as fill-in supervisor of the International Records Unit. Washington Dep. at 24-26.

The second incident of alleged retaliation was the refusal to approve Banks' request for a schedule change. In August of 1998, and then again in September of 1998, Banks requested schedule changes moving her start time from 6 a.m. to 4 a.m. See Requests for Temporary Schedule Change (attached as Def.'s Ex. 7). Both of these requests were approved. Around the time of her second request, Jack DiMaio informed Banks that further requests would not be approved. DiMaio Aff. (attached as Def.'s Ex. 11).

Banks filed her complaint in this action on January 3, 2000.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In employment discrimination cases, we apply this standard with

"added rigor" before granting summary judgment. Mills v. Health Care Service Corp., 171 F.3d 450, 454 (7th Cir. 1999).

The moving party bears the initial burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues where the nonmovant bears the burden of proof at trial. Id. The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must support its contentions with proper documentary evidence. Id.

Rule 56(c) mandates the entry of summary judgment against a party who fails to establish the existence of an element essential to that party's case. "In such a situation there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

## DISCUSSION

1. Title VII race discrimination

The Plaintiff has abandoned her race discrimination claims. Pl.'s Response to Def.'s Mot. for Summary Judgment at 1 n.1. The Court can find no genuine issue of

material fact, and therefore summary judgment is appropriate. Defendant's motion of summary judgment is granted as to the Plaintiff's race discrimination claim.

2.  ADEA discrimination

Banks claimed that the Post Office discriminated against her on the basis of her age by failing to promote her to the Supervisor position for which she was the successful applicant. The Post Office claims that this failure to promote is not an adverse employment action, and that the legitimate, nondiscriminatory reasons offered by the Post Office for this failure to promote are not a pretext for age discrimination.

The Age Discrimination in Employment Act (ADEA) makes it illegal for an employer to "discharge any individual . . . because of [that] individual's age." 29 U.S.C. § 623(a)(1). A plaintiff suing under the ADEA must establish that his employment would not have been adversely affected "but for" the employer's motive to discriminate against him because of his age. O'Connor v. DePaul University, 123 F.3d 665, 669 (7th Cir. 1997) (citations omitted).

An ADEA plaintiff may prove age discrimination with either direct or circumstantial evidence. When an ADEA plaintiff, like Banks, is unable to furnish direct evidence of discrimination, she may attempt to establish her case with circumstantial evidence and through the Supreme Court's McDonnell Douglas burden-shifting model. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03, 93

S.Ct. 1817, 36 L.Ed.2d 668 (1973). This approach necessitates a three-step inquiry that has been described in a number of recent Seventh Circuit opinions. See, e.g., Wilson v. AM Gen. Corp., 167 F.3d 114, 119-20 (7th Cir. 1999). First, the plaintiff must establish a prima facie case of discrimination. Once the plaintiff makes out a prima facie case, a presumption of discrimination arises, and the burden shifts to the defendant to come forward with evidence of a "legitimate, nondiscriminatory reason" for discharging the plaintiff. Finally, the plaintiff has an opportunity to show by a preponderance of the evidence that the ostensibly legitimate reasons offered by the defendant are not its true reasons, but are merely a pretext for discrimination. Id.

In her response to the Defendant's motion for summary judgment, Banks characterizes this age discrimination claim as a failure to promote. In a failure to promote case, the plaintiff must establish four elements to make out her prima facie case. Those elements are: (1) the plaintiff belongs to a protected class; (2) the plaintiff applied for and was qualified for a job in an available position; (3) the plaintiff was rejected for the position; and (4) after the rejection of the plaintiff, the defendant filled the position with someone not in the plaintiff's protected class, or the position remained open. Howard v. Lear Corp. EEDS and Interiors, 234 F.3d 1002, 1005-06 (7th Cir. 2000).

The Defendant contends that Banks cannot establish a prima facie case of discrimination, and specifically points to her failure to establish an adverse employment action. The Defendant offers the Plaintiff's poor performance as a legitimate reason for her failure to be promoted, and has further asserted that these reasons are not pretextual. This Court has concluded the crux of the matter are the reasons proffered by the Defendant for Banks' failure to be promoted, and the accompanying pretext inquiry. Accordingly, the Court will assume arguendo that the Banks has satisfied the elements of her prima facie case. See McCoy v. WGN Continental Broadcasting Co., 957 F.2d 368, 372 (7th Cir. 1992). Banks appears to agree that the pretext inquiry should be this Court's focus. See Pl.'s Response at 4.

The Post Office has stated that Banks' training in the timekeeping department was terminated because she failed to "grasp and develop a clear understanding of the PSDS operations." Def.'s Mem. of Law at 9. The Court notes, as have many courts before, that it does "not sit as a superpersonnel department that reexamines an entity's business decisions." Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986). It is not the place of this Court to determine whether the Post Office has exercised prudent business judgment. See id. This Court determines that, on their face, the Defendant's reasons for failing to promote Banks to the supervisor position are both legitimate and nondiscriminatory.

The Plaintiff responds that the reasons offered for the termination of training do not comport with statements made by both of Banks' supervisors, Dorothy Thomas and Jack DiMaio, and are merely a pretext for age discrimination. To defeat the Defendant's legitimate, nondiscriminatory explanation, Banks must establish that: (1) the proffered reasons are factually baseless; (2) the proffered reasons were not the actual motivation for the failure to promote; or (3) the proffered reasons were insufficient to motivate the failure to promote. Baron v. City of Highland Park, 195 F.3d 333, 341 (7th Cir. 1999) citing Wolf v. Buss (America) Inc., 77 F.3d 914, 919 (7th Cir. 1996).

Pretext "means a lie, or some phony reason for an action." Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir. 1995). To show pretext, Banks must undercut the Defendant's proffered reason for their failure to promote her to the back-up supervisor position. Banks contends that the Post Office, through supervisors such as Thomas and DiMaio, never intended to promote her. She points to evidence that Thomas informed DiMaio about Banks' successful application for the General Supervisor position and DiMaio's testimony that Thomas indicated that Thomas did not feel Banks was qualified for this position. "[T]he issue of pretext does not address the correctness or desirability of reasons offered for employment decisions." McCoy, 957 F.2d at 372. It does not matter whether the Post Office was right in its determination that Banks was

not qualified for the position. Id. Plaintiff has adduced not a scintilla of evidence to show that Jack DiMaio or Dorothy Thomas actually thought Banks was qualified, and simply refused to promote her because of her age.

Plaintiff notes there is a possible factual discrepancy as to when DiMaio and Thomas first discussed their feelings that Banks was not qualified for this promotion. See Pl.'s Response at 5-6. Whether this discussion occurred immediately after DiMaio received notice of Banks' successful application, or shortly thereafter is not material. The fact that the discussion took place is consistent with Defendant's position that Banks' supervisors believed she was not qualified to serve as a back-up supervisor.

As further evidence of pretext, the Plaintiff claims that when Thomas actually began to train Banks, the training was insufficient and rushed. The Seventh Circuit has recently held that an employer's methods of promotion in the interview context need not be consistent or reliable and the "use of a subjective, even arbitrary, selection process is not proof of discrimination." Diettrich v. Northwest Airlines, Inc., 168 F.3d 961, 965-66 (7th Cir. 1999) cert. denied, 528 U.S. 813, 120 S.Ct. 48, 145 L.Ed.2d 43 (1999). The discrimination laws recognize that employers "may act for many reasons, good and bad; they may err in evaluating employees' strengths; unless they act for a forbidden reason, these errors (more properly differences in assessment) do not matter." Kuhn v. Ball State Univ., 78 F.3d 330, 332 (7th Cir. 1996). The training

afforded Banks may not have allowed her to demonstrate her potential to perform the job, but it cannot be said that her failure to complete the training was due to age discrimination.

Since the Plaintiff has not shown the employer's legitimate, nondiscriminatory reason to be pretextual, the Defendant's motion for summary judgment on Plaintiff's age discrimination claim is granted.

3. Retaliation

"Subsection 3(a) of 42 U.S.C. § 2000e 'has been construed to prohibit an employer from pursuing retaliatory measures . . . against an employee for exercising his or her rights under Title VII.'" Cullom v. Brown, 209 F.3d 1035, 1040 (7th Cir. 2000) citing Reed v. Shepard, 939 F.2d 484, 492 (7th Cir. 1991). A plaintiff must establish three basic elements by a preponderance of the evidence to show retaliation: (1) that she opposed an unlawful employment practice; (2) that she was the object of adverse employment action; and (3) that the adverse employment action was caused by her opposition to the unlawful employment practice. Cullom, 209 F.3d at 1040 (citations omitted). Banks recounts two specific incidents in her complaint that she claims were in retaliation for her EEO complaint.

a. Refusal to staff as fill-in supervisor

Banks first claims that Natasha Washington's refusal to use her as a fill-in supervisor in the International Records Unit is in retaliation for Banks' EEO complaint. Assuming arguendo that the failure to use Banks in this "fill-in" job assignment is an adverse employment action, Banks must show a nexus between her opposition to an unlawful employment practice and Washington's refusal. A plaintiff must be able to "demonstrate that the employer would not have taken the adverse action 'but for' the protected expression." Johnson v. University of Wis. Eau Claire, 70 F.3d 469, 479 (7th Cir. 1995).

Banks cannot establish this "but for" causation. Washington has stated in her affidavit that she had no idea that Banks filed an EEO complaint during the relevant time period. See Washington Dep. at 50. Banks points out that she waived anonymity of her employment complaint. See Pl.'s Stmt. of Facts at 91. This Court cannot presume that Washington knew about Banks' complaint from this fact.

But even if Washington did know that the Plaintiff filed a complaint, there is adequate evidence in the record to support a nondiscriminatory motive for her refusal to staff Banks. Washington has stated that she thinks Banks does not accept responsibility, does not consistently complete assignments, and has displayed unprofessional behavior- that is why she does not want Banks acting as a fill-in

supervisor. See Washington Dep. at 24-26. This explanation serves as a legitimate, nondiscriminatory reason for Washington's refusal. Banks has not been able to show that Washington's performance evaluation is a pretext for age discrimination. As discussed supra, an employer may use their business judgment in regards to employment decisions. These decisions, if not shown to be "factually baseless," are unassailable. The Plaintiff refers to Washington's explanation as "undocumented performance deficiencies" but does not present this Court with any reason to doubt the truthfulness of Washington.

    b.    Refusal to allow schedule changes

Plaintiff next claims that DiMaio's refusal to allow her to change her schedule was in retaliation for her EEO complaint. The Seventh Circuit has noted that "not everything that makes an employee unhappy is an actionable adverse action." Ribando v. United Airlines, Inc., 200 F.3d 507, 511 (7th Cir. 1999) quoting Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996). Further, for an action to be materially adverse "it must be more disruptive than mere inconvenience or an alteration of job responsibilities." Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 136 (7th Cir. 1993).

Here, Banks requested that her employer approve her change of schedule, a change that was labeled "For Personal Convenience." Def.'s Stmt. of Facts at Ex. 7;

Banks Dep. at 85. Banks claims that the refusal to grant her request was a form of "psychological abuse and harassment." Response at 14. A hostile work environment cannot be shown when "conduct . . . is not severe or pervasive enough to create an objectively hostile or abusive work environment - an environment that a reasonable person would find hostile or abusive . . ." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). Applying this objective standard, this Court believes the refusal was merely an "inconvenience" and does not rise to the level of an adverse employment action that created a hostile work environment.

Plaintiff has not produced facts that show other workers were granted these schedule changes and therefore cannot show she was singled out by this refusal. Instead, she merely alleges that other, younger employees received requested changes. See Pl.'s Statement of Facts ¶ 92; Banks Dep. at 74-79. In her deposition, Banks does not establish that the other employees which she alleges received schedule changes were "similarly situated" in any material respect. See Auston v. Schubnell, 116 F.3d 251, 254 (7th Cir. 1997) (finding that plaintiff had failed to show that the similarly situated individuals were in the same department, reported to the same supervisor, or worked the same hours). In addition to the Auston factors, this Court cannot discern from the record the job responsibilities of any of these individuals, and how they compare to the job responsibilities of the Plaintiff.

Therefore, Defendant's motion for summary judgment is granted as to the Plaintiff's retaliation claims.

## CONCLUSION

For these reasons, the Court grants Defendant's motion for summary judgment in its entirety.

*Charles P. Kocoras*
Charles P. Kocoras
United States District Judge

Dated: March 13, 2001